**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    -v-<br><br>MOTOR TANKER *SKIPPER* BEARING INTERNATIONAL MARITIME NUMBER 9304667, AND THE OIL CARGO PREVIOUSLY LADEN THEREON,<br><br>        Defendant. | Case No. 1:26-cv-00697-CJN |

## CLAIMANT WINDWARD SHIPMANAGEMENT CORP.'S MOTION TO RECONSIDER, MODIFY, OR SET ASIDE THE INTERLOCUTORY SALE ORDER AND TO SET A BRIEFING SCHEDULE

Pursuant to Federal Rule of Civil Procedure 54(b), Windward Shipmanagement Corp. ("Windward") moves the Court to (1) reconsider, modify, or set aside its March 16, 2026 Interlocutory Sale Order (ECF No. 6); (2) stay any sale activity pending merits briefing; and (3) enter the proposed briefing schedule below. A memorandum of points and authorities and a proposed order are included herein.

Counsel for Windward conferred with the United States and the United States opposes this motion.

## I.    INTRODUCTION

Windward is the owner of MOTOR TAKER *SKIPPER* BEARING INTERNATIONAL MARITIME NUMBER 9304667 (the "*Skipper*"), which is the subject of this forfeiture proceeding. Concurrently with this Motion, Windward has filed a verified claim asserting its interest as a claimant and interested party in this matter.

The Government sought a private interlocutory sale of the *Skipper* before serving direct notice on Windward of this action or the motion, even though the Government knew Windward's identity and that Windward has actively engaged with the United States since December 2025 in an effort to recover its wrongfully seized property and, in doing so, mitigate the maintenance costs that the United States willfully took on in planning and executing that seizure.

An interlocutory sale is an extraordinary remedy, permitted only in narrow circumstances, and it must rest on a record tested by notice and an opportunity to be heard. Because those prerequisites were absent here, Windward respectfully requests that the Court vacate the interlocutory sale order—without prejudice—and set a briefing schedule so the Court can decide the issues on a complete record while the seized *res* remains protected.[1]

## II.    FACTUAL BACKGROUND

Windward is a ship-owning corporation and has owned the *Skipper* continuously since August 2024. On December 10, 2025, the Government seized the *Skipper*, and the *Skipper* remains in the Government's possession to date.

On February 26, 2026, the Government filed a civil forfeiture complaint. ECF No. 1. The Clerk issued a Warrant for Arrest *in rem* on February 27, 2026. ECF No. 2. On March 12, 2026, the Government moved for an interlocutory sale under Supplemental Rule G(7)(b). ECF No. 4. On March 16, 2026, the Court granted the motion for a private sale "free and clear," authorizing the Government or its contractors to contact buyers and determine price reasonableness (the "Sale Order"). ECF No. 6.

---

[1] On March 24, 2026, the Court issued a minute order (ECF No. 11) staying the interlocutory sale order pending resolution of the Hoglan Claimants' Emergency Motion (ECF No. 9). The relief sought herein is different than the relief granted by the Court's March 24 minute order.

At the time it made its motion, the Government had not provided direct notice to Windward—the *Skipper*'s owner and a known interested party—such that the time for a known claimant in Windward's position to file a claim in this matter has only begun to accrue. The Government sought and obtained the Sale Order before Windward's time to respond under the applicable rules had expired, notwithstanding the Government's knowledge that Windward had identified itself, cooperated, and was likely to oppose any interlocutory sale.

Shortly after the seizure, Windward engaged in good-faith dialogue with the Government. Within days, Windward had identified itself and was attempting to engage with the Department of Justice ("DOJ") and its various components that were involved in this seizure to work toward a reasonable resolution, including for the purpose of easing any storage and preservation costs that the Government took on in pursuing this matter. The Government failed to disclose any of this context to the Court. And the Government's filing did not attempt to address questions of cargo perishability or demonstrate that any imminent legal, regulatory, or market condition required immediate sale of the vessel or cargo before the Court could hear from a party who the Government knew would receive formal notice shortly after the filing of an apparently uncontested motion.

Windward filed its verified claim contemporaneously with this motion and seeks vacatur of the interlocutory sale order and a schedule to brief the sale issues on a complete record.

## III.   ARGUMENT

### A.   The Court has the authority to vacate an interlocutory order and provide Windward with an opportunity to be heard.

Two settled principles justify vacating the interlocutory sale order and setting a full briefing schedule: the Court's authority to reconsider interlocutory orders and the constitutional requirement of notice and an opportunity to be heard.

### 1. The Court may reconsider interlocutory orders when its understanding of the relevant circumstances changes.

The Court may revise "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 252 (D.D.C. 2020) (motions to reconsider interlocutory orders are "more flexible" than the standard for final judgments or orders). Doing so is particularly apt where, among other circumstances, "the movant presents new information that constitutes a change in the court's awareness of the circumstances." *Id.* (internal citations and quotations omitted) (government failed to disclose information that constituted "a change in the court's awareness of the circumstances" underlying an interlocutory order).

This Court granted the interlocutory sale order without being informed that Windward— the vessel's owner—had engaged with the Government as an interested party before and after this action was filed. Without that awareness, the Court entered the order before Windward had notice or an opportunity to respond.

### 2. Windward was not afforded notice and an opportunity to be heard.

Due process requires notice and a chance to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (emphasis added and internal quotation marks omitted) ("This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest . . . [t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."); *Propert v. District of Columbia*, 948 F.2d 1327, 1332 (D.C. Cir. 1991) ("[H]owever weighty the governmental interest may be in a given case, the amount of process required can never be reduced to zero—that is, the government is never relieved

4

of its duty to provide *some* notice and *some* opportunity to be heard prior to final deprivation of a property interest.").

The Government knew Windward's identity and knew that Windward had been actively engaging with the Government since December 2025. Nevertheless, the Government did not provide direct notice to Windward's counsel before filing the motion or before the Court granted it, even though email notice was readily available and was sent days later. These circumstances warrant vacatur of the interlocutory sale order and a full briefing schedule. *Propert*, 948 F.2d at 1335 (holding that a D.C. policy with respect to the towing and destruction of supposed "junk" vehicles violated due process because it did not provide vehicle owners notice or an opportunity to be heard).

**B.      The Government did not carry its burden under Rules E(9) and G(7)(b).**

The Court should vacate the Sale Order because the Government failed to meet its burden under Rules E(9) and G(7)(b). Under Rule E(9)(a)(i), the Court may order all or part of a property to be sold only if: "(A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or disproportionate; or (C) there is an unreasonable delay in securing release of the property." Fed. Supp. R. E(9)(a)(i). Under Rule G(7)(b)(i), the Court may order all or part of a property to be sold only if: (A) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or is disproportionate to its fair market value; (C) the property is subject to a mortgage or to taxes on which the owner is in default; or (D) the court finds other good cause.

In this case, the Government failed to even allege that any of these conditions are present in its Motion for Interlocutory Sale. The Government offered no evidence that the hull or cargo was perishable in the sense Federal Supplemental Rules E(9) and G(7)(b) contemplate. Both rules

equate "perishable" property to property that is "at risk of deterioration, decay, or injury by being detained in custody pending the action." Fed. Supp. R. E(9)(a)(i)(A), G(7)(b)(i)(A). In its Motion for Interlocutory Sale (ECF No. 4), the Government failed to include any allegations or evidence that the *Skipper* or the oil cargo onboard was at risk of deterioration, decay, or injury.[2]

The Government also offered no comparative showing of "excessive" or "disproportionate" costs. While the Government alleged in its Motion that it had spent $47,000,000 on maintenance costs for the *Skipper*, plus another estimated $15,000 per day for oil storage, *see* ECF No. 4 at 2–3, the Government does not even allege that these costs are "excessive" or "disproportionate" for these assets. The fact that maintenance may carry a high price in terms of absolute dollars is not sufficient to demonstrate that costs are "excessive" or "disproportionate." *See United States v. M/Y Amadea*, No. 23-cv-9304, 2024 WL 2946071, at *4 (S.D.N.Y. June 11, 2024) ("Thus, in assessing whether the maintenance costs of the *Amadea* are excessive, the Court must not look solely at the total dollar amount of the maintenance costs, but must principally consider whether those amounts are more than what is usual as compared to the maintenance costs for other similar yachts.").

This is especially so where the Government concedes that it has experts on hand who understood the economic implications of the decision to seize the *Skipper* prior to its seizure but pursued the seizure anyway. *See generally* ECF No. 4-1. Because the Government has failed to offer any comparative analysis of maintenance costs for vessels that are the same or similar to the *Skipper*, it failed to meet its burden under Federal Supplemental Rules E(9)(a)(i)(B) and G(7)(b)(i)(B).

---

[2] Windward is not contesting the forfeiture of the cargo aboard the *Skipper* and takes no position as to the removal of the cargo from the vessel in advance of a final order of forfeiture.

And to the extent that the Government alleged that they have spent millions in maintenance costs for the *Skipper*, those allegations are woefully deficient for proving "excessive" or "disproportionate" costs under Rules E(9) and G(7). *See M/Y Amadea*, 2024 WL 2946071, at *5 (denying interlocutory sale where Government failed to show "excessive" or "disproportionate" costs and where record was not adequately developed).

Additionally, there was no unreasonable delay by Windward, as contemplated under Federal Supplemental Rule E(9)(a)(i)(C). At all times, Windward has moved promptly to engage with the Government and is prepared to progress this action swiftly. Indeed, the Government has made no representations regarding its ability to engage in any sale in light of the OFAC designation of the *Skipper*—any delay with the sale will be driven by the Government's failure to obtain a specific or general license, or delisting of the *Skipper*, not the actions of Windward or any other interested party.

Moreover, interlocutory sales require special care and transparency. *See M/Y Amadea*, 2024 WL 2946071, at *1. The current Order delegates broad discretion to the Government or its contractors to set process and price, with no independent appraisal, publication, floor price, or pre-closing notice. This is not a scenario that a full notice-and-hearing process would likely allow. *See e.g., M/Y Amadea*, 2024 WL 2946071, at *5 n.9 (contemplating validity of independent appraisal of vessel and finding that ratio of maintenance costs to value does not justify sale). Accordingly, the Court should vacate the Sale Order because the Government failed to meet its burden under Federal Supplemental Rules E(9) and G(7)(b).

**C.     At minimum, and in the alternative, the Court should modify the Sale Order to impose process safeguards.**

Even in the event that the Government were to carry its burden of demonstrating the propriety of an interlocutory sale—which they have not and cannot—a fulsome process involving

7

input and argument from interested parties will lead to a far better sale process. Such a process would, at a minimum:

    a) Restrict a sale below a percentage of the average appraised value absent court approval;

    b) Require commercially reasonable marketing/publication;

    c) Require pre-sale notice and an objection window to claimants;

    d) Segregate proceeds and preserve priorities;

    e) Separate hull and cargo proceeds;

    f) Reserve *custodia legis* expenses to be determined at distribution;

    g) Require post-sale reporting and court approval; and

    h) Maintain judicial supervision.

In any event, no such interlocutory sale is appropriate given the Government's utter failure to carry its burden to demonstrate the necessity or propriety of such an extraordinary remedy.

**D.**     **A briefing schedule will allow proper adjudication without jeopardizing the *res*.**

The Government is still in possession of the *Skipper*, which permits the Court time to resolve the merits of an interlocutory sale on a full record. Windward proposes the following briefing schedule to ensure that the Court's decision rests on a fair and accurate record:

    a)     The Government shall have 7 days from entry of the Court's Order to file a renewed Motion for Interlocutory Sale and to provide (i) any notice affidavits and (ii) a declaration detailing keeping costs since seizure and the bases for any "excessive" or "disproportionate" assertions.

    b)     Windward's Opposition to the Motion for an Interlocutory Sale shall be filed within 14 days after the Government's renewed Motion for Interlocutory Sale.

c)      Oral Argument and/or Evidentiary Hearing on the renewed Motion for Interlocutory Sale will be set at the Court's discretion after the above briefing schedule is completed.

Vacating or staying the interlocutory sale order pending a full briefing schedule will not prejudice the Government. The *Skipper* remains in custody, no imminent sale deadline has been shown, and a briefing schedule will allow the Court to evaluate the asserted bases for sale on a complete record before any irreversible disposition occurs. Thus, where an interlocutory sale order issued before notice and before the response period expired, and where no prejudice flows from reconsideration, the proper course is to vacate or stay the order and permit full briefing.

## IV.    CONCLUSION

The Government should not be permitted to sell Windward's property without first providing Windward notice and the opportunity to be heard. For these reasons, Windward respectfully requests that the Court grant its Motion to Reconsider, Modify, or Set Aside the Interlocutory Sale Order and to Set a Briefing Schedule.

Dated:  March 25, 2026                        Respectfully Submitted,

/s/ Michael J. Baratz
Michael J. Baratz, D.C. Bar No. 480607
**Steptoe LLP**
1330 Connecticut Ave., NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
mbaratz@steptoe.com

Andrew C. Adams, N.Y. Bar No. 4727293*
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900
acadams@steptoe.com

9

\* *pro hac vice* motion forthcoming

*Attorneys for Claimant Windward
Shipmanagement Corp.*