**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>      -v-<br><br>MOTOR TANKER *SKIPPER* BEARING INTERNATIONAL MARITIME NUMBER 9304667, AND THE OIL CARGO PREVIOUSLY LADEN THEREON,<br><br>           Defendant. | Civ. A. No. 26-697 (CJN) |

**REPLY MEMORANDUM IN SUPPORT OF
CLAIMANT WINDWARD SHIPMANAGEMENT CORP.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    Introduction ........................................................................................................... 1

II.   The Government Has Not Met Its Burden of Pleading a Lawful Basis for *In Rem*
      Jurisdiction ........................................................................................................... 3

III.  This Court Is Not a Proper Venue ....................................................................... 5

IV.   The Government Cannot Meet Its Heightened Pleading Burden on the Merits Because It
      Concedes the Court Must Presume Iranian Oil Transactions *Do Not* Benefit an FTO ...... 8

V.    Conclusion ......................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carpenter v. United States*,
   585 U.S. 296 (2018)............................................................................................3

*Matter of Seizure & Search of Motor Yacht Tango*,
   597 F. Supp. 3d 149 (D.D.C. 2022) ...................................................................6

Order, *Matter of Seizure of M/T Skipper with Int'l Mar. Org. No. 93404667*, No.
   25-sz-50 (ZMF) (D.D.C. Dec. 12, 2025) ..................................................................2

*United States v. All Funds in Acct. Nos. 747.034/278, 747.009/278, &
   747.714/278 in Banco Español de Credito, Spain*, 295 F.3d 23 (D.C. Cir.
   2002) ...............................................................................................................3, 4

*United States v. All Petroleum-Prod. Cargo Aboard the Bella with Int'l Mar. Org.
   No. 9208124*,
   No. CV 20-1791, 2020 WL 3771953 (D.D.C. July 2, 2020).....................................6

*United States v. All Petroleum-Prod. Cargo Onboard M/T Arina*,
   173 F.4th 342 (D.C. Cir. 2026)..........................................................................10

*United States v. Premises Known as 608 Taylor Ave.*,
   584 F.2d 1297 (3d Cir. 1978)..............................................................................2

**Statutes**

14 U.S.C. § 522(a) ...............................................................................................5, 6

18 U.S.C. § 981(a) ....................................................................................................10

18 U.S.C. § 981(a)(1)(G)(i) .......................................................................................10

18 U.S.C. § 981(f)......................................................................................................10

28 U.S.C. § 1333(1) .....................................................................................................5

28 U.S.C. § 1355(b)(2) ..................................................................................... *passim*

28 U.S.C. § 1395(c) ....................................................................................................7

28 U.S.C. § 2461(a) ....................................................................................................7

28 U.S.C. § 2461(b) ..........................................................................................5, 6, 7

Maritime Drug Law Enforcement Act, 46 U.S.C. § 70502(d)(2)...............................................4, 5

**Court Rules**

Fed. R. Civ. P. 9...........................................................................................................................8

Fed. R. Civ. P. 38(e) ...................................................................................................................8

Fed. R. Civ. P., Supp. Rule C(2)(c) ...........................................................................................8

Fed. R. Civ. P., Supp. Rule G(2)(b)............................................................................................6

Fed. R. Civ. P., Supp. Rule G(2)(e) ...........................................................................................6

Fed. R. Civ. P., Supp. Rule G(2)(f)....................................................................................3, 4, 8

**Other Authorities**

Office of Foreign Assets Control, General License U, Authorizing the Delivery
    and Sale of Crude Oil and Petroleum Products of Iranian-Origin Loaded on
    Vessels as of March 20, 2026, *available at*
    https://ofac.treasury.gov/media/935376/download?inline.........................................................9

## I.    Introduction

The Government's Opposition confirms that the Complaint fails to state a claim for civil forfeiture with the specificity required by Supplemental Rule G and rests on a critical assumption that the Government itself has now disclaimed.

First, the Government has not met its heightened pleading burden to allege a basis for exercising *in rem* jurisdiction over the *Skipper*.  The Government's response proceeds from the premise that 28 U.S.C. § 1355(b)(2) eliminates any need to plead a statutory basis for proceeding against a vessel on the high seas.  But that premise fails here because § 1355(b)(2) applies only to property "located in a foreign country" or seized by a foreign government; the *Skipper* was neither. The Government therefore still must adequately plead the facts necessary to justify proceeding against this vessel on the high seas, including its contention that the *Skipper* was stateless.  The Government also has not met its burden with respect to an allegation of statelessness: the Government can point only to inadmissible hearsay that fails to satisfy the statutory definition of statelessness and may well implicate testimonial immunities that the Government conspicuously fails to address.

Second, the Government has failed to establish that venue is proper in this District.  In opposition, the Government reveals that the *Skipper* is deliberately held in international waters off the coast of Texas—apparently in an effort to avoid establishing venue in the Southern District of Texas or to justify continued warrantless searches of the vessel—and asserts that this choice to maintain the vessel just beyond U.S. territorial waters provides a basis for venue in this District under 28 U.S.C. § 1355(b)(2).  Not so.  As relevant here, that statute applies only to property subject to forfeiture that is "located in a foreign country."  Contrary to the Government's assertion

and consistent with the plain text of the statute, no court has held that property on the high seas is "located in a foreign country" for purposes of Section 1355(b)(2).

Finally, on the merits, the Government's Opposition confirms it has failed to meet its heightened pleading burden to sufficiently allege that the *Skipper* "afford[s] any person a source of influence over" the IRGC or IRGC-QF. Faced with the Executive Branch's recent OFAC license expressly *authorizing* Iranian oil sales—and with recent reports that the United States has proposed temporarily waiving Iranian oil sanctions during ongoing negotiations—the Government now effectively concedes that transactions in Iranian oil presumptively ***do not*** benefit the IRGC or IRGC-QF, destroying the sole logical basis for forfeiture as pleaded in this Complaint. Given that the Government fails to allege more than that the *Skipper* loaded oil at Iranian ports at some time in the past, this concession dooms the Government's argument that it has sufficiently alleged the vessel "afford[s] influence" over the IRGC or IRGC-QF under the heightened pleading standard of Rule G.[1]

---

[1] Windward withdraws its argument that evidence of the oil cargo aboard the *Skipper* must be suppressed. That withdrawal does not affect the analysis here, and the cargo—which the Government alleges consists of Venezuelan oil (Compl. ¶ 2)—does not cure the deficiencies in the Complaint. Moreover, the circumstances of the seizure underscore the same point. The Government sought and obtained a seizure warrant from a magistrate judge before acting in international waters, and the court later observed that such prior judicial approval is "what the rule of law requires." Order, *Matter of Seizure of M/T Skipper with Int'l Mar. Org. No. 93404667*, No. 25-sz-50 (ZMF), at 1 n.1 (D.D.C. Dec. 12, 2025). That observation reflects the premise that judicial authorization supplies the basis for the Government's exercise of authority over property in this context. Courts recognize that the Government's continued retention of seized property must remain tethered to the basis on which seizure authority was obtained, and may not be sustained by *post hoc* rationalizations advanced for the first time in litigation. *See, e.g.*, *United States v. Premises Known as 608 Taylor Ave.*, 584 F.2d 1297, 1302–03 (3d Cir. 1978) (requiring that continued retention of seized property be reasonably related to the Government's asserted interest). The Government identifies no authority permitting it to obtain judicial authorization for one rationale and maintain custody of the property on another without returning to the Court for approval.

Windward also reserves all rights to move for suppression of evidence, including electronic devices, removed from the *Skipper* and searched within the United States without resort to a

**II.    The Government Has Not Met Its Burden of Pleading a Lawful Basis for *In Rem* Jurisdiction**

The Government has not met its heightened pleading burden under Supplemental Rule G(2)(f) to allege a basis for exercising *in rem* jurisdiction over the *Skipper*.  The Government's arguments in opposition are unpersuasive.

*First*, the Government's effort to avoid the need for a pleaded statutory basis to exercise *in rem* jurisdiction over a vessel seized on the high seas by relying on 28 U.S.C. § 1355(b)(2) is unavailing.  Section 1355(b)(2) expressly applies only to property subject to forfeiture that is either "located in a foreign country" or "has been detained or seized pursuant to legal process or competent authority of a foreign government."  One of those conditions applied in *United States v. All Funds in Acct. Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Español de Credito, Spain*, cited by the Government, which concerned funds held in bank accounts in Spain.  295 F.3d 23, 24 (D.C. Cir. 2002).  Not so for the *Skipper*: according to the Government's own current position, it was neither located in a foreign country nor seized by a foreign government, but rather was seized by the United States on the high seas.[2]

Indeed, as Windward has already explained, the Government's expansive reading of Section 1355(b)(2) is not only at odds with the plain text of the statute, but also runs afoul of longstanding international law principles, contrary to the *Charming Betsy* canon.  Reading the statute to extend to ***any vessel*** seized on the high seas conflicts with the international law principle that vessels on the high seas are subject to the exclusive jurisdiction of the flag state, subject only

---

warrant based on probable cause.  *See, e.g.*, *Carpenter v. United States*, 585 U.S. 296, 317 (2018) ("'some quantum of individualized suspicion'" required before a search or seizure (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 560-61 (1976))).

[2] *See infra* at 5-6 (refuting the Government's argument that courts have treated property on the high seas as "located in a foreign country").

to narrow exceptions. *See* Mot. at 11-12. Tellingly, the Government offers no response to this argument and cites no case holding there is *in rem* jurisdiction over a vessel seized on the high seas in the absence of a statutory basis for proceeding against a vessel on the high seas. That is the core problem with the Government's response: it assumes that *Banco Español* and § 1355(b)(2) displace any need to plead a statutory basis for proceeding against a vessel on the high seas. But *Banco Español* involved property located in a foreign country, not a vessel on the high seas, and § 1355(b)(2) does not by its terms apply to the latter circumstance. On the facts the Government now asserts, it still must adequately plead some statutory basis for this case to proceed *in rem* against the *Skipper*, yet it has not done so.

*Second*, the Government still has not met its burden under Supplemental Rule G(2)(f) to adequately allege the *Skipper* is stateless. In the Complaint, the Government relied exclusively on unspecified hearsay "provided by the U.S. Embassy" to substantiate this allegation. *See* Mot. at 9-11. In its Opposition, the Government attempts to rectify its pleading failure by pointing to a statement on a Guyanese government website that Windward referenced in its Motion. Opp. at 2; *see* Mot. at 12 n.5. But this statement, too, is hearsay; furthermore, it fails to satisfy the standard to establish statelessness set forth in the Maritime Drug Law Enforcement Act, which provides that a foreign nation's response to a claim of registry "is proved conclusively by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. § 70502(d)(2). The Government has not alleged nor provided any such certification. Thus, the Government has still not alleged "sufficiently detailed facts to support a reasonable belief" that it will be able to meet its burden of proof at trial that the seizure of the *Skipper* was valid. Moreover, and as discussed in the Motion, the Government should not be permitted to rely on a bald assertion of hearsay in an effort to satisfy a showing that the registry is "denied by the nation whose registry is claimed," 46 U.S.C.

4

§ 70502(d)(2). It is particularly proper for the Court to discount allegations seeking to satisfy the Government's substantial pleading burden where the Government has declined to expressly disclaim any intent to rely on state secret or diplomatic privileges to shield the disclosure of any theoretically admissible "information" purportedly provided through diplomatic channels. *See* Mot. at 11 n.3. The Government conspicuously omitted in its response to confirm such an intent, and thereby risks having the Court rely on "information" at this stage of the litigation that the Government will not produce or offer at any trial.

## III.    This Court Is Not a Proper Venue

The Government asserts venue is proper here because, rather than bringing the *Skipper* to the territorial waters of the United States, the Government has chosen to keep the vessel idling in international waters off the coast of Texas. As an initial matter, contrary to its assertion in the Opposition, the Government did not allege the current location of the *Skipper* in the Complaint.[3]

Regardless, the fact that the *Skipper* is in international waters does not establish venue in this District. Here, again, the Government misplaces its reliance on 28 U.S.C. § 1355(b)(2). As noted above, that statute expressly applies only to property that is either "located in a foreign country" or "has been detained or seized pursuant to legal process or competent authority of a foreign government." The Government's assertion that—contrary to the plain language of the statute—courts have held property on the high seas is "located in a foreign country" for purposes

---

[3] For this proposition the Government cites a paragraph in the "Jurisdiction and Venue" section of the Complaint, but the cited paragraph merely states: "Pursuant to 14 U.S.C. § 522(a) [conferring jurisdiction, but not venue, over vessels seized on the high seas] and 28 U.S.C. §§ 2461(b) [permitting an action in admiralty, rather than a civil action, where a vessel is seized on the high seas], 1333(1) [granting federal jurisdiction over various admiralty actions], this court has *jurisdiction* for property subject to forfeiture on the high seas." Compl. ¶ 5 (emphasis added). None of these statutes articulates a basis for venue as to a ship seized and purposefully maintained on the high seas.

of Section 1355(b)(2) is simply incorrect. *Matter of Seizure & Search of Motor Yacht Tango,* 597 F. Supp. 3d 149 (D.D.C. 2022), cited by the Government, did not involve property on the high seas: there, the vessel at issue was "in the port of Palma de Mallorca," Spain. *Id.* at 150. The court held the vessel was "***held in a foreign port*** and therefore located in a foreign country" pursuant to Section 1355(b)(2). *Id.* at 152 n.2 (emphasis added).

The court in *Motor Yacht Tango* also stated in dicta that "if [the vessel] were found in another location where it was seized by a foreign government or on the high seas, this Court would similarly have jurisdiction/venue." *Id.* But this dicta relied on a different statute altogether—28 U.S.C. § 2461(b), which provides that where seizure of property is authorized by statute, actions for forfeiture of property seized on the high seas "may be enforced by libel in admiralty."[4] That is ***not*** the statute the Government alleges in the Complaint provides venue here, nor does the Government even cite that statute in its Opposition—presumably because the statute makes no reference to venue. Supplemental Rule G required the Government to allege "grounds for . . . venue" and to "identify the statute under which the forfeiture action is brought." Supp. R. G(2)(b), G(2)(e). The Complaint did not identify 28 U.S.C. § 2461(b), libel in admiralty, or any other high-seas enforcement theory as a basis for ***venue***; it referenced § 2461(b) only in connection with an assertion of jurisdiction. *See* Compl. ¶ 5. Rather, the Government has relied exclusively on 28 U.S.C. § 1355(b)(2), *see* Compl. ¶ 4, which simply does not apply.

---

[4] *See also United States v. All Petroleum-Prod. Cargo Aboard the Bella with Int'l Mar. Org. No. 9208124,* No. CV 20-1791, 2020 WL 3771953, at *1 (D.D.C. July 2, 2020) (cited in *Motor Yacht Tango,* 597 F. Supp. 3d at 152 n.2) ("[T]his Court has venue and jurisdiction over the Defendant Properties: (i) as they are located in a foreign country or have been detained by a foreign authority, pursuant to 28 U.S.C. § 1355(b)(2); and/or (ii) as they are on the high seas, pursuant to 14 U.S.C. § 522(a) and 28 U.S.C. § 2461(b)."). Again, these statutes may confer federal courts with jurisdiction over relevant cases, but do not define venue or permit the Government to manufacture venue by maintaining possession of seized property in a legal no man's land.

The Government contends that Congress *must* have intended for 28 U.S.C. § 1355(b)(2) to provide venue in this District for vessels seized on the high seas, because otherwise venue would not be proper anywhere. But a different statute, 28 U.S.C. § 1395(c), provides that "[a] civil proceeding for the forfeiture of property *seized outside any judicial district* may be prosecuted in *any district into which the property is brought*" (emphases added). *See* Mot. at 14. The Government does not claim the *Skipper* cannot be brought into a judicial district, such as the Southern District of Texas to which the vessel is currently proximate. Rather, the Government has chosen to maintain the *Skipper* offshore of Galveston in international waters, regardless of the extra costs this choice no doubt imposes (which, remarkably, the Government both chose to incur but nevertheless cites as justification for the premature sale of the vessel). The Court should not reward this maneuver by countenancing an atextual assertion of venue in this District.

Moreover, the Government consistently cites to statutes that confer jurisdiction over matters pursued *in admiralty*, rather than as to civil actions.[5] Apart from the clear textual distinction between admiralty actions and civil actions, including forfeitures pursued civilly (as the Government purports to do here),[6] this distinction in the form of proceeding carries substantive differences. One such difference is that the rules of procedure governing admiralty and maritime cases, Supplemental Rule C, expressly contemplate that the libelant (plaintiff) in an admiralty matter will not maintain a vessel outside any district in the exact manner that the Government is

---

[5] *See* Compl. ¶ 5 (citing 28 U.S.C. §§ 2461(b), 1333(1)).

[6] *Compare* 28 U.S.C. § 2461(a) ("Whenever a civil fine, penalty or pecuniary forfeiture is prescribed for the violation of an Act of Congress without specifying the mode of recovery or enforcement thereof, it may be recovered in a civil action.") *with* 28 U.S.C. § 2461(b) ("[W]henever a forfeiture of property is prescribed as a penalty for violation of an Act of Congress and the seizure takes place on the high seas . . . such forfeiture may be enforced by libel in admiralty[.]").

7

doing here:  "In an action in rem the complaint must . . . (c) state that the property *is within the district or will be within the district while the action is pending*."  Supp. R. C(2)(c) (emphasis added).  To the extent that the Government chooses to restyle this matter as one arising in admiralty, as it may be attempting to do through its citations to certain authorities in its opposition, the applicable rules only highlight the failure of the Government's pleading.[7]

The Government's confused series of citations to grants of jurisdiction (not venue) and extension of federal jurisdiction over suits in admiralty (as opposed to civil actions) does not satisfy the Complaint's basic venue pleading requirement.  That result follows from the Government's own litigation choices, all based on its tactical decision to maintain the *Skipper* offshore in a costly legal limbo rather than proceed on any well-founded basis.

**IV.    The Government Cannot Meet Its Heightened Pleading Burden on the Merits Because It Concedes the Court Must Presume Iranian Oil Transactions *Do Not* Benefit an FTO**

The Government has not rebutted Windward's arguments that the Complaint fails to meet the Government's heightened pleading burden under Supplemental Rule G(2)(f) to allege facts that "support a reasonable belief that the government will be able to meet its burden of proof at trial" that the *Skipper* "affords persons . . . sources of influence over the IRGC, including the IRGC-QF."  Compl. ¶ 53.  The Government has not alleged details of any transactions, or facts suggesting that the *Skipper* had any dealings whatsoever, with the IRGC or IRGC-QF; nor has it alleged how any property or revenues connected to the *Skipper* were used to create a source of influence over the affairs of the IRGC or IRGC-QF.  Instead, the Government's Opposition lays bare that its allegation that the *Skipper* "affords . . . sources of influence" over the IRGC rests

---

[7] Other significant and substantive differences turn on the admiralty or non-admiralty nature of a forfeiture proceeding, including the right to trial by jury.  *See* Fed. R. Civ. P. 9 (Advisory Committee Notes); Fed. R. Civ. P. 38(e).

entirely on its generalized assertion that any oil loaded at an Iranian port necessarily benefits the IRGC.

Yet remarkably, the Government *acknowledges this is not so* in addressing OFAC's March 20, 2026 General License, under which "the sale, delivery, or offloading of crude oil or petroleum products of Iranian origin loaded on any vessel" was expressly authorized by OFAC for a period of 30 days.[8]  The Government asserts this license does not contradict its argument because the license only applies to "the subset of Iranian oil transactions that do not ultimately benefit the IRGC or IRGC-QF."  Opp. at 8.  But that argument only underlines the reason that the Executive Branch, through its General License, has destroyed the core premise of its claim in this case.  Were the Government's allegations sufficient to allege that the loading or transport of Iranian oil is sufficient to describe assistance to the IRGC or IRGC-QF, then the Government's position in this case would necessarily mean there *is no subset* of Iranian oil transactions that do not ultimately benefit the IRGC or IRGC-QF.   In short, the Government's effort to rescue the General License from illegally contravening statutory prohibitions against aiding foreign terrorist organizations effectively concedes that the Executive Branch *presumes* that Iranian oil transactions do not benefit the IRGC or IRGC-QF.  That presumption is precisely the opposite of the presumption on which the Government filed this case, and forecloses the Government from establishing that the *Skipper* affords a source of influence over the IRGC or IRGC-QF solely because the vessel is alleged to have loaded oil at an Iranian port.

The Government's suggestion that the recent OFAC General License of Iranian oil sales is of no moment because other sanctions programs and other civil and criminal penalties might still

---

[8] Office of Foreign Assets Control, General License U, Authorizing the Delivery and Sale of Crude Oil and Petroleum Products of Iranian-Origin Loaded on Vessels as of March 20, 2026, *available at* https://ofac.treasury.gov/media/935376/download?inline.

attach to such sales (Opp. at 6-8) misses the mark.  By expressly licensing Iranian oil sales *without limit*, the Executive Branch has made clear that the mere act of transporting oil of Iranian origin cannot on its own provide a *prima facie* basis to conclude that the transaction constitutes a "source of influence" over the IRGC or IRGC-QF—as the Government confirms in its Opposition.  Either the recent OFAC General Licenses allow for the movement of oil that the Government nevertheless argues in this case *are illegal*, or they stand for the more reasonable proposition that actual facts linking a transaction to a foreign terrorist organization ("FTO") would be necessary to support a conclusion that an Iranian oil transaction, in itself, supports an FTO.[9]  The Government's opposition brief has disclaimed the former, and now the Government must live with the latter.

Finally, to the extent the Government relies on relation-back principles to avoid any temporal limitation in 18 U.S.C. § 981(a)(1)(G)(i), that reliance should be understood narrowly.  In *Arina*, cited by the Government (and issued after Windward's motion), the D.C. Circuit held that under Section 981(f), title to property subject to forfeiture may vest upon commission of the act giving rise to forfeiture, and therefore rejected a timing-based challenge to the Government's theory that the property at issue constituted "assets of" an FTO.  *United States v. All Petroleum-Prod. Cargo Onboard M/T Arina*, 173 F.4th 342, 346–47 (D.C. Cir. 2026).  But *Arina* expressly declined to address the statute's alternative "source of influence" theory.  *Id.* at 350.  Moreover, the *Arina* opinion did not confront the issue of whether the language of Section 981(f)—which retroactively provides for forfeiture based on the "commission" of an "act"—can apply to those provisions of Section 981(a) that provide for forfeiture without reference to the commission of an act.  Section 981(a)(1)(G)(i) is such a provision, basing forfeiture on a status (i.e., property being

---

[9] The Government's contradictory positions also risk significant civil exposure for those individuals, businesses, sailors, and others who—operating in reliance on the recent General License—would, under the Government's theory, be supporting the IRGC and IRGC-QF.

among the assets that afford a person a source of influence) rather than on the commission of any specified act.  Windward therefore preserves the position that the "affording . . . a source of influence" prong should not be treated as coextensive with the separate "assets of" prong— particularly where the Government does not allege the *Skipper* was ever owned by Iran, NIOC, the IRGC, or any affiliate, and instead seeks to infer "influence" solely from past voyages involving Iranian-origin oil.

## V.    Conclusion

For all of the above reasons and those set forth in its opening brief, Windward respectfully requests that the Court dismiss the Complaint with respect to the *Skipper*.

Dated:  May 18, 2026

Respectfully Submitted,

By: */s/ Michael J. Baratz*

Michael J. Baratz, D.C. Bar No. 480607
**Steptoe LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
mbaratz@steptoe.com

Andrew C. Adams, N.Y. Bar No. 4727293
**Steptoe LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 506-3900
acadams@steptoe.com
Admitted *pro hac vice*

*Attorneys for Claimant Windward*
*Shipmanagement Corp.*

11