**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MOTOR TANKER SKIPPER BEARING
INTERNATIONAL MARITIME
NUMBER 9304667, AND THE OIL
CARGO LADEN THEREON,

      Defendant *In Rem*.

Civil Action No. 1:26-CV-00697

**JURY TRIAL DEMANDED**

**IRANIAN TERRORISM VICTIMS' ANSWER**
**TO UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Pursuant to Rule G(5)(b) of the Federal Rules of Civil Procedure, the Iranian Terrorism

Victims hereby answer the government's Verified Complaint *In Rem*, dated February 26, 2026

(ECF No. 1), as follows:[1]

**NATURE OF THE ACTION**

1.    The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the

allegations in Paragraph 1; except, deny that the United States has any right, title or interest in the Defendant

Motor Tanker SKIPPER bearing International Maritime Number ("IMO") 9304667, together with the oil

cargo laden on the SKIPPER (hereinafter collectively: "SKIPPER" or "Defendant Property") that is

superior to the right, title or interest of the Iranian Terrorism Victims in the SKIPPER.

2.    The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the

allegations in Paragraph 2; except admit that the SKIPPER was seized by U.S. authorities while laden with

cargo.

---

[1] A full list of Claimants is included as attachment Exhibit 1 to the Verification of the Iranian
Terrorism' Victims' Claims. *See* ECF No. 34-1.

**JURISDICTION AND VENUE**

3.      Paragraph 3 contains jurisdictional and legal conclusions to which no response is required.  To the extent a response is required, the Iranian Terrorism Victims admit that, based on the facts alleged, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1333, 1345, and 1355.

4.      Paragraph 4 contains legal conclusions regarding venue to which no response is required.  To the extent a response is required, the Iranian Terrorism Victims admit that, based on the facts alleged, venue is proper in this judicial district pursuant to 28 U.S.C. § 1355(b)(2).

5.      Paragraph 5 contains legal conclusions to which no response is required.  To the extent a response is required, the Iranian Terrorism Victims admit that, based on the facts alleged, this Court may exercise jurisdiction pursuant to 14 U.S.C. § 522(a) and 28 U.S.C. §§ 2461(b) and 1333(1).  The Iranian Terrorism Victims lack knowledge sufficient to admit or deny whether the acts and omissions giving rise to the alleged forfeiture occurred on the high seas.

**FACTS GIVING RISE TO FORFEITURE**

A.      **Relevant Entities**

i.      **Government of Iran**

6.      Paragraph 6 purports to quote from a document or documents that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those documents for their contents and deny any characterization of those documents that is inconsistent with their contents.  To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 6; except, on information and belief, admit that Iran was designated as a state sponsor of terrorism on January 19, 1984, and has not been delisted.

### ii.    Iranian Ministry of Petroleum

7.    Paragraph 7 purports to quote from a website that speaks for itself and the Iranian Terrorism Victims respectfully refer the Court to the website for its contents and deny any characterization of the website that is inconsistent with its contents.  To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 7; except, on information and belief, admit that the Iranian Ministry of Petroleum is a state-run organ of the Iranian government with oversight over the Iranian oil industry.

8.    Paragraph 8 purports to quote from a document or documents that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those documents for their contents and deny any characterization of those documents that is inconsistent with their contents.  To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 8.

9.    Paragraph 9 purports to quote from a document or documents that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those documents for their contents and deny any characterization of those documents that is inconsistent with their contents.  To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 9.

10.    Paragraph 10 purports to quote from a webpage that speaks for itself and the Iranian Terrorism Victims respectfully refer the Court to that webpage for its contents and deny any characterization of the webpage that is inconsistent with its contents.  To the extent that a response is required, the Iranian Terrorism Victims admit, on information and belief that OFAC designated the Iranian Ministry of Petroleum under Executive Order 13,224 in October 2020 for

providing financial support to the IRGC-QF.

### iii. Islamic Revolutionary Guard Corps

11. On information and belief, the Iranian Terrorism Victims admit the allegations in Paragraph 11.

12. Paragraph 12 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent that a response is required, the Iranian Terrorism Victims admit, on information and belief, that the Department of the Treasury made the findings referenced in Paragraph 12.

13. Paragraph 13 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 13; except, on information and belief, the Iranian Terrorism Victims admit that the IRGC and IRGC-QF use a network of shipping companies and front companies to hide their involvement in the sale and shipment of Iranian oil, and that holding groups and companies in the petrochemical sector provide financial lifelines to the IRGC.

14. Paragraph 14 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 14.

15.     Paragraph 15 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents.  To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 15; except, on information and belief, the Iranian Terrorism Victims admit that the IRGC uses the proceeds from the distribution of petroleum products to fund its terror activities.

16.     Paragraph 16 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents.  To the extent that a response is required, on information and belief, the Iranian Terrorism Victims admit the allegations in Paragraph 16 including that OFAC designated the IRGC-QF under Executive Order 13,224 in October 2007.

17.     Paragraph 17 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents.  To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 17; except, admit that in April 2019 the President announced that he would designate the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1189).

18.     Paragraph 18 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for

their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 18; except, on information and belief, the Iranian Terrorism Victims admit that the IRGC was responsible for planning the attack on the Khobar Towers in Dhahran, Saudi Arabia, during which 19 U.S. Air Force personnel were killed and more than 350 were injured.

19.  The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 19.

### iv.  National Iranian Oil Company

20.  Paragraph 20 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 20; except, on information and belief, the Iranian Terrorism Victims admit that NIOC is the national oil company of Iran and a subsidiary of the Iranian Ministry of Oil, and that according to OFAC, the distribution of NIOC oil helps to finance Iran's IRGC-QF and its terrorist proxies.

21.  Paragraph 21 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 21; except, on information and belief, the Iranian Terrorism Victims admit that Treasury determined NIOC was an agent or affiliate of the

IRGC and that OFAC designated NIOC pursuant to Executive Order 13,224 in October 2020.

### v.     Iranian Oil Terminals Company

22.     Paragraph 22 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those websites for their contents and deny any characterization of those webpages that is inconsistent with their contents.  To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 22.

### vi.    Kharg Oil Terminal

23.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 23.

24.     Paragraph 24 refers to a website that speaks for itself and the Iranian Terrorism Victims respectfully refer the Court to that website for its contents and deny any inconsistent characterization.   To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 24.

### vii.   National Iranian South Oil Company

25.     Paragraph 25 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents.  To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 25.

### viii.  Triton Navigation Corporation

26.     Paragraph 26 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their

contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 26; except, on information and belief, the Iranian Terrorism Victims admit that Triton Navigation Corporation was sanctioned by OFAC on November 3, 2022, and that the vessel currently known as the SKIPPER was identified as blocked property in which Triton Navigation Corporation had an interest.

### ix. Windward Shipmanagement Corporation

27. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 27.

### x. M/T SKIPPER

28. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 28; except, on information and belief, the Iranian Terrorism Victims admit that the SKIPPER is a stateless crude oil tanker.

29. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 29.

30. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 30; except, on information and belief, the Iranian Terrorism Victims admit that the SKIPPER (then named the M/T ADISA) was sanctioned by OFAC on November 3, 2022.

31. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 31.

32. The Iranian Terrorism Victims admit, on information and belief, the allegations in Paragraph 32.

33. The Iranian Terrorism Victims admit, on information and belief, the allegations in Paragraph 33.

B.     **Venezuela Oil Exports**

34.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 34.

35.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 35.

36.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 36.

37.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 37.

38.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 38.

39.     The Iranian Terrorism Victims admit, on information and belief, the allegations in Paragraph 39.

C.     **Multiple SKIPPER loadings at Kharg Oil Terminal**

40.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 40.

41.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 41.

42.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 42.

43.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 43; except, based on information and belief, the Iranian Terrorism Victims admit that on or about November 3, 2022, OFAC identified the ANNA (then named the M/T RAIN

9

DROP) as property in which a blocked person has an interest.

44.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 44 and Footnote 3; except, based on information and belief, the Iranian Terrorism Victims admit that on or about February 22, 2022, OFAC designated the VERONICA under its prior name, the M/T PEGAS, for being property of PSB Lizing OOO, a designated subsidiary of Russia-based Promsvyazbank ("PSB"), and that vessels engaged in illicit oil shipment activity and violating U.S. sanctions often are referred to as comprising the international "Ghost Fleet."

45.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 45.

46.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 46.

## D.  The SKIPPER's Oil Cargo Is Also Subject to Forfeiture

47.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 47; except, on information and belief, the Iranian Terrorism Victims admit that the SKIPPER was seized by the United States on or about December 10, 2025.

48.     Paragraph 48 contains legal conclusions to which no response is required.  To the extent a response is required, the Iranian Terrorism Victims deny that the United States has any right, title, or interest in the SKIPPER's Oil Cargo that is superior to the right, title, or interest of the Iranian Terrorism Victims pursuant to TRIA § 201.

### i.     The SKIPPER's Oil Cargo Supports the SKIPPER's Operations

49.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 49; except, on information and belief, the Iranian Terrorism Victims admit

that the SKIPPER is a ghost tanker for Iran.

50.     The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 50; except, on information and belief, the Iranian Terrorism Victims admit as alleged therein and as acknowledged by the Iranian Terrorism Victims in their Verified Claim that the transportation of non-Iranian freight on the SKIPPER helps conceal the SKIPPER's primary role as an Iranian ghost fleet tanker, further demonstrating that the Defendant Property is an asset of an agency or instrumentality of Iran subject to attachment and execution pursuant to TRIA § 201.

### COUNT ONE – FORFEITURE
### 18 U.S.C. § 981(a)(1)(G)(i)

51.     The Iranian Terrorism Victims incorporate by reference their responses to Paragraphs 1 to 50 above and deny that the authority referenced in Paragraph 51 confers on the United States any right, title or interest in the Defendant Property that is superior to the right, title or interest of the Iranian Terrorism Victims in the SKIPPER.

52.     The Iranian Terrorism Victims admit that the IRGC, including the IRGC-QF, is a designated foreign terrorist organization.

53.     Paragraph 53 characterizes a statute that speaks for itself, and no response is required.  To the extent a response is required, the Iranian Terrorism Victims admit that the Defendant Property is subject to forfeiture and deny that any of the authorities referenced in Paragraph 53 confer on the United States any right, title or interest in the Defendant Property that is superior to the right, title or interest of the Iranian Terrorism Victims in the SKIPPER.

### AFFIRMATIVE DEFENSES

The defenses asserted herein are based on the Iranian Terrorism Victims' knowledge, information, and belief at this time.  The Iranian Terrorism Victims specifically

reserve the right to assert additional affirmative defenses and other defenses and/or modify, amend, or supplement any defense contained herein at any time.  Without admitting any of the facts alleged in the Complaint except as specifically set forth above, and without assuming any burden of proof, persuasion, or production not otherwise legally assigned to it as to any element of the government's claims, the Iranian Terrorism Victims assert the following affirmative and other defenses:

1.        The Iranian Terrorism Victims possess an interest in the SKIPPER and its cargo.

2.        The Iranian Terrorism Victims possess an interest in the SKIPPER and its cargo that is senior to the government's claim under TRIA, Pub. L. No. 107-297, § 201(a) (2002) (codified at 28 U.S.C. § 1610 Note), notwithstanding this civil forfeiture action.[2]

3.        The Defendant Property, the SKIPPER and its cargo, constitutes a "blocked asset" under TRIA, by virtue of Executive Order 13,224, 66 Fed. Reg. 49079 (Sept. 23, 2001), as amended by Executive Order 13,886, 84 Fed. Reg. 48041 (Sept. 9, 2019), under authorities of IEEPA.

4.        The Iranian Terrorism Victims are entitled to attach and execute upon the SKIPPER and its cargo because each element required to establish their interest under TRIA has been satisfied.  Specifically, the Iranian Terrorism Victims hold final, enforceable judgments for compensatory damages against the Islamic Republic of Iran—a terrorist party—based on an act of

---

[2] The Terrorism Risk Insurance Act ("TRIA") provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" may execute on the "blocked assets" of that terrorist party or its "agency or instrumentality" "to satisfy such judgment[s] to the extent of any compensatory damages." Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C. § 1610 Note.  Accordingly, TRIA overrides "the civil forfeiture statute." *See Est. of Levin v. Wells Fargo Bank*, N.A., 156 F.4th 632, 643 n.1 (D.C. Cir. 2025).

terrorism; the SKIPPER and its cargo are blocked under the International Emergency Economic Powers Act including through Executive Orders issued thereunder; and the SKIPPER and its cargo were owned or operated for the benefit of Iran's agencies or instrumentalities.

5.     The Fifth Amendment provides that "[n]o person shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V.  Because of their claim under TRIA, the Iranian Terrorism Victims have a property interest in the SKIPPER and its cargo governed by the Fifth Amendment.  As a result, forfeiting the SKIPPER and its cargo to the government without "due process of law" would violate the Iranian Terrorism Victims' rights under the Fifth Amendment.

6.     The Fifth Amendment also provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V.  Because of the Iranian Terrorism Victims' property interest in the SKIPPER and its cargo, forfeiting that property to the government would result in a taking of their property without just compensation.

7.     To the extent the SKIPPER and its cargo are not required to be transferred to the Iranian Terrorism Victims, they are required to be deposited into the United States Victims of State Sponsored Terrorism Fund.  *See* 34 U.S.C. § 20144(e)(2)(A).

8.     The Defendant Property should be placed into a constructive trust for the benefit of all claimants.

9.     The forfeiture of the Iranian Terrorism Victims' property would violate the Excessive Fines clause of the Eighth Amendment.

10.    The Iranian Terrorism Victims deny all allegations not expressly admitted herein and specifically reserve the right to amend this Answer, to raise additional defenses, cross-claims, and third-party claims not asserted herein as may be warranted by the revelation of

13

information during further proceedings, and to pursue alternative remedies under civil forfeiture law.

11.     The Iranian Terrorism Victims incorporate by reference any defense that any other claimant pleads in this action, to the extent the defense applies to any claims against the SKIPPER, in whole or in part.

## CROSS-CLAIMS & COUNTERCLAIMS

The Iranian Terrorism Victims assert the following cross-claims and counterclaims (the "TRIA Claims") against the United States and all other claimants asserting an interest in the SKIPPER and its cargo who appear in this action.  Therein, the Iranian Terrorism Victims seek a declaration that, as a matter of federal law, their claims are entitled to priority over all competing claims for the purpose of attachment and execution, including but not limited to competing forfeiture claims, terrorism judgment creditors, execution creditors, and non-TRIA claimants, and allege as follows:

1.     This Court has jurisdiction over the TRIA Claims pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Supplemental Rule G.

2.     Venue is proper in this District because the TRIA Claims are ancillary to, and arise from, the same proceeding pending before this Court.

3.     The Iranian Terrorism Victims are judgment creditors of the Islamic Republic of Iran, holding final, unsatisfied judgments for damages arising from acts of state-sponsored terrorism.

4.     The defendants to the TRIA Claims include the United States and all other parties who assert any legal, equitable, possessory, property, or contingent interest in the SKIPPER and its cargo.

5.    The TRIA Claims are asserted for the limited purpose of preserving the Iranian Terrorism Victims' priority rights and do not seek adjudication of priority until the universe of legally permissible claimants in this action is established.

6.    Through the TRIA Claims, the Iranian Terrorism Victims do not assert any cause of action against the United States, or any foreign sovereign, other than execution against blocked assets as specifically permitted and authorized by TRIA, as set forth herein.

7.    The Iranian Terrorism Victims have timely filed a Verified Claim in this action and either obtained or are pursuing judicial authorization under 28 U.S.C. § 1610(c) to execute on their judgments.

8.    The SKIPPER and its cargo constitute blocked assets of Iran and/or its agency or instrumentality and are therefore subject to attachment and execution by the Iranian Terrorism Victims pursuant to TRIA § 201.

9.    Multiple parties now assert competing interests in the SKIPPER and its cargo, including the United States, other terrorism judgment creditors, and non-TRIA claimants.

## PRIORITY UNDER TRIA § 201

1.    The Iranian Terrorism Victims restate and reallege the foregoing Paragraphs as if fully set forth herein.

2.    TRIA § 201(a) provides that, "[n]otwithstanding any other provision of law," blocked assets of a terrorist party or its agency or instrumentality shall be subject to execution by holders of terrorism judgments.

3.    TRIA's "notwithstanding" clause preempts inconsistent state and federal law, overrides competing claims not grounded in TRIA, and elevates qualifying terrorism judgment creditors over all non-TRIA claimants.

15

4.      Federal courts have consistently recognized that TRIA creates a priority execution regime favoring holders of terrorism judgments over competing non-TRIA claimants.

5.      Accordingly, even if competing claimants satisfy federal forfeiture and/or state-law execution or attachment requirements, their claims are subordinate to the Iranian Terrorism Victims' TRIA Claims.

## DECLARATORY RELIEF

1.      The Iranian Terrorism Victims restate and reallege the foregoing Paragraphs as if fully set forth herein.

2.      An actual and justiciable controversy exists concerning the relative priority of the parties' interests in the SKIPPER and its cargo.

3.      The Iranian Terrorism Victims seek a declaration that: (i) they hold priority rights for attachment and execution purposes; (ii) any competing executions and/or attachments are subordinate to their TRIA Claims; and (iii) any distribution of the SKIPPER and its cargo must respect that priority.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and Rule G(9) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Iranian Terrorism Victims demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Iranian Terrorism Victims respectfully request that the Court:

1.      That judgment be entered in their favor and against Plaintiff and all other claimants in this action.

2.      That the SKIPPER and its cargo be released from Plaintiff's custody and

returned to the Iranian Terrorism Victims.

3. Declare the Iranian Terrorism Victims' interests have priority over other parties for attachment and execution purposes under TRIA § 201, FSIA § 1610, and all other applicable federal laws.

4. Declare that any competing executions, attachments, liens, or asserted interests are subordinate to the Iranian Terrorism Victims' rights for attachment and execution purposes.

5. In the alternative, and only if the Court determines that the SKIPPER and its cargo, or any portion thereof, are not lawfully subject to attachment and execution by the Iranian Terrorism Victims, the Court should declare that any forfeiture, remission, or other disposition of such assets must be deposited into the United States Victims of State Sponsored Terrorism Fund pursuant to the statutory scheme set forth in 34 U.S.C. § 20144(e), and that no disposition inconsistent with that statutory framework may occur.

6. For attorneys' fees and the costs of suit.

7. Grant the Iranian Terrorism Victims such other and further relief as the Court deems just and proper.

Dated: May 22, 2026    Respectfully submitted,

*/s/Aryeh S. Portnoy*

Aryeh S. Portnoy, D.C. Bar No. 464507
John L. Murino, D.C. Bar No. 484818
Michael Williams, D.C. Bar No. 90006255

CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500

Joshua S. Sohn (*pro hac vice* pending)

CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001


*Attorneys for Claimants Iranian Terrorism Victims*