UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) ) | Civ. A. No. 1:26-cv-697 (CJN) |
| MOTOR TANKER SKIPPER BEARING INTERNATIONAL MARITIME NUMBER 9304667, AND THE OIL CARGO PREVIOUSLY LADEN THEREON, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## REPLY IN SUPPORT OF GOVERNMENT'S MOTION TO STRIKE JUDGMENT CREDITORS OF IRAN

The Opposition Brief of the Iranian Terror Victims does not refute the simple syllogism that forecloses their attempt to enter this case. The syllogism is this: (1) civil forfeiture claimants must have an interest in the defendant property; (2) the Terror Victims have no interest in the SKIPPER or its cargo; (3) therefore the Terror Victims may not appear as claimants in this case. Indeed, the Government's Opening Brief cited multiple cases holding that unsecured judgment creditors of terrorist actors lack an interest in their debtors' assets, notwithstanding Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA").

The Terror Victims' main counterargument is to say that *Est. of Levin v. Wells Fargo Bank, N.A.,* 156 F.4th 632 (D.C. Cir. 2025) changed the rules of the game, abrogated the Government's cited caselaw, and allows them to appear in this case. Not so. In *Levin*, the D.C. Circuit upheld writs of attachment obtained by other Iranian terror victims against other assets, holding that: (1) the assets were "blocked assets" under TRIA; and (2) the prior exclusive jurisdiction doctrine did not bar the terror victims from seeking writs of attachment. Here, the

Government agrees that the SKIPPER and its cargo are blocked assets, and the Government is not raising a prior exclusive jurisdiction defense. So *Levin* did not change anything relevant to the legal dispute here.

More importantly, *Levin* did not change the settled rule that a civil forfeiture claimant must have an interest in the defendant property. Indeed, the Terror Victims concede that this "interest" requirement still exists, by quoting other D.C. Circuit caselaw for the proposition that "[a]t the pleading stage, a claimant need only allege a colorable interest in the property." Opp. at 5 (quoting *United States v. $17,900.00*, 859 F.3d 1085, 1089 (D.C. Cir. 2017) (emphasis deleted)); *see also* 18 U.S.C. § 983(a)(4)(A) ("any person claiming an interest in the seized property may file a claim asserting such person's interest in the property"); *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009) (denying standing because "claimants have failed to demonstrate that they have a cognizable interest in the monies to be forfeited."); *cf. United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 689 (5th Cir. 2013) (TRIA does not supplant the criminal forfeiture rules either; a third-party petitioner in a TRIA case still must show an interest in the property).[1]

If the Terror Victims had secured valid attachments against the SKIPPER or its cargo, then such attachments may have given them the requisite "interest" to appear as claimants in this case. And the Terror Victims did have the right to *seek attachment* of this property—indeed, they would

---

[1] Besides citing *Levin*, the Terror Victims also try to distinguish one of the Government's cited cases (*United States v. Sun*) by saying that *Sun* "involved a criminal forfeiture proceeding governed by 21 U.S.C. § 853, under which title to the forfeited property vested in the United States at the time of the offense pursuant to the relation-back doctrine." Opp. at 9. This attempt to distinguish *Sun* clearly fails, given that the relation-back doctrine exists in civil forfeiture as much as criminal forfeiture. 18 U.S.C. § 981(f). Moreover, like civil forfeiture, criminal forfeiture requires third-party petitioners to assert an "interest" in the subject property, 18 U.S.C. § 853(n)(2), so *Sun*'s holding that TRIA does not confer an interest applies equally to civil and criminal forfeiture.

have had this right with or without TRIA. As *Levin* itself stated, the purpose and effect of TRIA is to abrogate the sovereign immunity of state terror actors, thereby allowing their judgment creditors to seek attachment of state-owned property. *Levin*, 156 F.4th at 636-37 ("TRIA thus operates to abrogate the FSIA's general immunity from execution and attachment that would otherwise protect the property of designated state sponsors of terrorism."). Here, the SKIPPER and its cargo are not Iranian state property, so foreign sovereign immunity would not bar attachment, with or without TRIA. It follows that TRIA is an irrelevant red-herring in this case. It waives a foreign sovereign immunity that never existed at all as to the SKIPPER and its cargo.

Once the TRIA red-herring is brushed away, it is clear that the Terror Victims are just general unsecured judgment creditors who lack any secured interest in the SKIPPER and thus lack standing to participate in this case. Indeed, the Terror Victims compare unfavorably even to the Hoglan Claimants from this case, who also are unsecured judgment creditors against Iran. The Hoglans implicitly recognized the need to secure an attachment against the SKIPPER and sought to do to by filing an admiralty case against the SKIPPER, obtaining an arrest warrant *in rem*, and trying to serve the warrant on a canister from the SKIPPER's prior cargo. As discussed in the Government's motion to strike the Hoglans, this procedure was legally defective to secure a valid interest in the SKIPPER. But the Hoglans recognized the need to secure an interest in the SKIPPER, even if their approach did not succeed. The Terror Victims did not take this step. They come to this Court as judgment creditors who did not even try to secure their judgment against the SKIPPER.

The Terror Victims are also far removed from the plaintiffs in the cases that they cite as supporting authority. In *Warmbier v. Democratic People's Rep. of Korea*, No. CV 18-977, 2026 WL 1393272 (D.D.C. Apr. 30, 2026), a judgment-holder against North Korea sought a writ of

3

attachment to be served on J.P. Morgan, which held funds owned by a North Korean proxy. *Levin* was the same fact pattern, if you swap "Iran" for "North Korea" and "Wells Fargo" for "J.P. Morgan." In both cases, the question was whether the plaintiffs could seek to attach the subject property, and the courts held that they could. But the question here is whether the Terror Victims *have* attached the SKIPPER or its cargo, and they have not.

*United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607 (7th Cir. 2015) also offers the Terror Victims no support. In fact, it refutes their position. In that case, the district court hearing a civil forfeiture case over Al-Qaeda-linked assets originally denied standing to judgment creditors of Al-Qaeda given that they had no lien against the assets, a ruling that the Seventh Circuit called "correct[]." *Id.* at 619 ("The district court correctly noted that, without either a final judgment entered or lien secured, Appellees were nothing more than 'general unsecured creditors' when they first filed their claims."). After the judgment creditors later secured a "perfected lien on the defendant funds," *id.* at 614, the court reversed course. *R.J. O'Brien* thus supports the Government's position that a secured interest in the defendant property is necessary for standing in a civil forfeiture case.

*United States v. Gutierrez-Ochoa*, 2026 WL 1157964 (D.D.C. Apr. 29, 2026) offers the Terror Victims no meaningful support either. As the Government cited in its Opening Brief, *Gutierrez-Ochoa* correctly stated that TRIA "does not confer an interest" on judgment-creditors of terrorist parties. *Gutierrez-Ochoa*, 2026 WL 1157964 at *16. Thus, if such judgment-creditors would not have an interest in their debtors' forfeitable assets absent TRIA, they would not have an interest with TRIA either. *See id.* ("TRIA cannot serve as the basis for a legal interest in the property"); *id.* at *17 ("an *in personam* judgment ... does not create any interest in particular

4

property of the defendant.") (quoting *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 772 F. Supp. 2d. 205, 217 (D.D.C. 2011) (ellipses in original)).

For whatever reason, the *Gutierrez-Ochoa* court did not take the logical next step of holding that the judgment-creditors' lack of interest deprived them of standing, instead holding that it defeated their claim on the merits. The reason may be that the *Gutierrez-Ochoa* court's decision (and the parties' briefs) on standing focused on the narrower question of whether the judgment-debtor cartel was the same as the cartel linked to the forfeitable assets. *See Gutierrez-Ochoa*, 2026 WL 1157964 at *6 ("The government contends that petitioners lack Article III and statutory standing because they 'hold a judgment against the Juárez Cartel' but 'now seek to collect assets of CJNG, an entirely different cartel . . .'"). Be that as it may, the Terror Victims here concede that they must show an interest in the Defendant Assets to have standing, and *Gutierrez-Ochoa* correctly stated that TRIA does not confer an interest. Thus, *Gutierrez-Ochoa* supports the proposition that the Terror Victims lack standing.

Finally, there is no merit to the Terror Victims' argument that the civil forfeiture statute "conflicts" with TRIA or that normal standing rules must be discarded due to this "conflict." *See* Opp. at 3, 7. There is no relevant conflict here.[2] In fact, the two statutes operate harmoniously. The civil forfeiture statute requires a claimant to have an interest in the defendant property, which has universally been interpreted to exclude general unsecured judgment creditors. Meanwhile, TRIA abrogates the foreign sovereign immunity of state terrorist actors, thus allowing judgment creditors to secure their judgments against property of state terrorist actors. When a judgment has

---

[2] By contrast*, R.J. O'Brien* held that the innocent-owner defense to forfeiture conflicted with TRIA, and *Levin* held that 18 U.S.C. § 981(c) conflicted with TRIA. *R.J. O'Brien*, 783 F.3d at 620; *Levin*, 156 F.4th at 643 fn. 1. These holdings are irrelevant here, as the Government does not rely on the innocent-owner defense or 18 U.S.C. § 981(c) in seeking to strike the Iranian Terror Victims.

been so secured, the judgment creditor has an interest in the subject property and has standing to

participate in a civil forfeiture case over such property. But the Terror Victims have not secured

their judgment against the SKIPPER or its cargo, and thus they lack standing.

For the foregoing reasons, the Government respectfully request that the Court strike the

claims of the Iranian Terror Victims. The same is true for the *pro se* Hernandez claimants, who

did not file an Opposition to the Government's motion to strike but who are identically situated

to the Iranian Terror Victims.

Dated: June 3, 2026
      Washington, D.C.

Respectfully Submitted,

Jeanine Ferris Pirro
United States Attorney

By:      */s/ Rajbir Datta*
          Rajbir Datta
          N.Y Bar 5206073
          Assistant United States Attorney
          National Security Section
          U.S. Attorney's Office
          District of Columbia
          601 D Street, N.W.
          Washington, D.C. 20579
          (202) 252-7687
          Rajbir.Datta@usdoj.gov

John Eisenberg
Assistant Attorney General
National Security Division

By:      */s/ Sean Heiden*
          Sean Heiden
          D.C. Bar 1617636
          Acting Deputy Chief
          Counterintelligence and Export Control
          National Security Division
          U.S. Department of Justice
          Sean.heiden2@usdoj.gov

Margaret A. Moeser
Chief
Money Laundering, Narcotics and Forfeiture
Section, Criminal Division
U.S. Department of Justice

By:   \_\_/s/ *Joshua L. Sohn*_____
          Joshua L. Sohn
          Trial Attorney