**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o U.S. Attorney's Office<br>601 D Street, NW<br>Washington, DC 20530<br><br>Plaintiff,<br><br>v.<br>MOTOR TANKER SKIPPER BEARING INTERNATIONAL MARITIME NUMBER 9304667, AND THE OIL CARGO LADEN THEREON,<br>Defendant *in rem*. | Civil Action No. 1:26-CV-00697 (CJN) |

**IRANIAN TERRORISM VICTIMS' SUPPLEMENTAL**
**BRIEF REGARDING VENUE UNDER 28 U.S.C. § 1355(b)(2)**

**INTRODUCTION**

The Iranian Terrorism Victims, who have filed a claim asserting their interests in the Motor Tanker SKIPPER bearing international maritime number 9304667 (the "SKIPPER"), along with the oil cargo laden on the SKIPPER (together with the SKIPPER, the "Defendant Property"),[1] submit this supplemental brief pursuant to the Court's October 5, 2026 Minute Order, requesting supplemental briefing regarding whether 28 U.S.C. § 1355(b)(2)'s reference to a "foreign country" includes the high seas. For the following reasons, the answer is "yes," and the Iranian Terrorism Victims maintain that this Court may exercise *in rem* jurisdiction over the Defendant Property and that venue in this district is proper pursuant to 28 U.S.C. § 1355(b)(2) and related statutes.

In moving to dismiss the Government's complaint, Windward Shipmanagement Corp. ("Windward") argues, among other things, that the Government did not sufficiently allege a basis

---

[1] *See* Verified Claim and Statement of Interest of Iranian Terrorism Victims, May 1, 2026, Dkt. 34.

for *in rem* jurisdiction and that venue is improper in this district.[2] With respect to jurisdiction, the Government has sufficiently pled facts confirming that the SKIPPER is stateless, which suffices for jurisdictional purposes.[3] *United States v. Hsin-Yung*, 97 F. Supp. 2d 24, 26 (D.D.C. 2000) (it "is well-settled that international law permits any state to subject stateless vessels on the high seas to its jurisdiction, and the majority of courts hold that this exercise of jurisdiction is valid even in the absence of a nexus between the stateless vessel and the country asserting jurisdiction."). Thus, there is no real dispute regarding whether this Court has jurisdiction over the Defendant Property. Regarding venue—which, as explained below, is proper here—Windward not only suggests a problem that does not exist, but also offers no workable solution because the SKIPPER remains in international waters. Even if venue were arguably not proper, jurisdiction is, and the Iranian Terrorism Victims consent to venue in this Court for their claims.

## ARGUMENT

### A. 28 U.S.C. § 1355(b)(2) Is Intended to Capture Seizures on the High Seas

Section 1355(b)(2) states that "[w]henever property subject to forfeiture under the laws of the United States is located in a foreign country . . . an action or proceeding for forfeiture may be brought . . . in the United States District Court for the District of Columbia." 28 U.S.C. § 1355(b)(2). While § 1355(b)(2) does not expressly use the term "high seas," the inquiry does not end there. Rather, both judicial rulings and the legislative history of § 1355(b)(2) support a finding of venue here.

---

[2] *See* Mem. Of Points and Authorities in Support of Windward's Mot. To Dismiss and Motion to Suppress at 7-15, April 15, 2026, Dkt. 27-1 ("Mot. to Dismiss").

[3] The Court indicated during the July 2, 2026 status conference that it was likely to agree. *See* July 2, 2026 Status Conference Transcript at 9:7-11. And even Windward acknowledges that the Government can meet its burden to confirm that the SKIPPER is stateless. *See* Mot. to Dismiss at 12, n.5.

While few courts appear to have addressed this question directly, those that have discussed the issue have consistently interpreted § 1355(b)(2) to include the "high seas" within the statute's reference to "foreign country." *See*, *e.g.*, *In re Seizure & Search of the Motor Yacht Tango*, 597 F. Supp. 3d 149, 152 n.2 (D.D.C. 2022) ("Target Property is held in a foreign port and therefore located in a foreign country, but if it were found . . . on the high seas, this Court would similarly have jurisdiction/venue. *See* 28 U.S.C. § 1355(b)(2); 28 U.S.C. § 2461(b)."); *United States v. All Petroleum-Prod. Cargo Aboard the BELLA with Int'l Mar. Org. No. 9208124*, No. CV 20-1791, 2020 WL 3771953, at *1 (D.D.C. July 2, 2020) (holding that the Court had venue and jurisdiction over oil cargo located in international waters prior to seizure); *United States v. All Petroleum-Prod. Cargo Onboard the M/T ARINA with Int'l Mar. Org. No. 9189952*, No. CV 21-2817 (RDM), 2024 WL 4133293, at *1 (D.D.C. Sept. 10, 2024), *aff'd sub nom. United States v. All Petroleum-Prod. Cargo Onboard M/T ARINA with Int'l Mar. Org. No. 9189952*, 173 F.4th 342 (D.C. Cir. 2026) (granting government's unopposed motion for judgment on the pleadings and raising no questions regarding venue in this district pursuant to 28 U.S.C. § 1355(b)(2) where oil cargo was located on the high seas).[4]

[4] In that case, although the district court did not address venue, the amended consolidated complaint and the two initial pre-consolidation complaints all premised venue on 28 U.S.C. § 1355(b)(2) which was never disputed. *See United States v. All Petroleum-Product Cargo onboard the M/T NOSTOS with International Maritime Organization Number 9258014*, 21-cv-2817 (RDM) (D.D.C.), Compl., at ¶ 4 (Dkt. No. 3) (Oct. 22, 2021) ("*NOSTOS* Complaint"); *United States v. All Petroleum-Product Cargo Onboard the M/T Arina with International Maritime Organization Number 9189952*, 21-cv-3234 (RDM) (D.D.C.), Compl., filed December 9, 2021, at ¶ 4 (Dkt No. 3); *United States v. All Petroleum-Product Cargo Onboard the M/T Arina with International Maritime Organization Number 9189952, et al.*, 21-cv-3234 (RDM) (D.D.C.), Am. and Consol. Compl, filed May 15, 2023, at ¶ 4 (Dkt No. 25). The oil cargo at issue was transferred from Kharg Island, Iran to the Motor Tanker NOSTOS (IMO No. 9258014) via shit-to-ship transfers "approximately 26 kilometers off the coast of Limassol, Cyprus." *NOSTOS* Complaint ¶ 21.

In a recent concurring opinion in *United States v. Nasri*, No. 22-55685, 2026 WL 2591865, at *26 (9th Cir. Sept. 2, 2026), Judge Bybee of the Ninth Circuit discussed § 1355(b) in depth in the context of civil forfeiture, albeit addressing jurisdiction, not venue, and repeatedly described § 1355(b)(2) as applicable to property "located abroad" rather than only "in a foreign country." *See, e.g., id.* ("It is a venue rule. It deals only with where venue is proper when the property is ***outside the United States***. Section 1355(b)(2) dictates that when the property is ***located abroad***—whether it is held by the United States or 'detained or seized' by a foreign government—a forfeiture action must be brought in either one of the venues listed in § 1355(b)(1) or in the District of Columbia." And "[t]he mere fact that the property subject to forfeiture is ***located abroad*** would automatically confer jurisdiction. . .") (Bybee, J., *concurring*) (emphasis added). Therefore, property "located abroad" necessarily includes property on the high seas.

Additionally, although Judge Bybee noted that the statute could have been written more clearly, he acknowledged that courts have read § 1355(b)(2) as creating a "legal fiction" that the property, wherever it is actually found, is located in the district. *Id.* at 25. This also is consistent with how courts have interpreted Congress's intent when it amended 28 U.S.C. § 1355 in 1992 to add § 1355(b). *See*, *e.g.*, *United States v. All Funds in Account Nos 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Credito, Spain*, 295 F.3d 23, 26 (D.C. Cir. 2002) ("*Banco Espanol*") (confirming that § 1355(b)(2) provided for venue in this district over property was located in a bank in Spain). Thus, courts have found that, in amending the statute, Congress addressed a prior gap in the law: "[s]ubsection (b)(2) addresses a problem that arises whenever the property subject to forfeiture under the laws of the United States is located in a foreign country. . . . Subsection (b)(2) resolves this problem by providing for jurisdiction over such property in the

United States District Court for the District of Columbia. . . .” *Id*. (citing 137 Cong. Rec. S16640–01 (Nov. 13, 1991) (statement of Sen. D’Amato)).

That logic applies with equal, if not greater, force here. Prior to the 1992 amendment, venue for forfeiture actions was limited to the options identified in 28 U.S.C. § 1395 (discussed *infra*), and “proved unworkable in a certain subset of cases.″ *Nasri*, 2026 WL 2591865, at *22 (Bybee, J., *concurring*). Although not addressed in *Nasri*, cases in which § 1395 is unworkable include cases where the property, like the Defendant Property, is located neither in the United States nor any other country. Where property is located in a foreign country, there is at least a possibility that the foreign country might cooperate with a forfeiture order (or may cooperate when a forfeiture action is commenced) to bring the property within the jurisdiction of a district court. Here, however, where the property is on the high seas and not alleged to be associated with a foreign country, the requirements of § 1395 are certainly unworkable—there is no government that could assist the United States, and thus no potential to bring the property to any district court. Thus, § 1355(b)(2) provides a necessary backstop by establishing venue in the District Court for the District of Columbia.

**B. Venue Is Proper Because the SKIPPER is Stateless and Was Seized on the High Seas.**

In moving to dismiss the Complaint, Windward cites 28 U.S.C. § 1395 to contend that venue is improper in this district.[5] As an initial matter, the Government did not plead venue under 28 U.S.C. § 1395. But more fundamentally, Section 1395(b) provides for venue in a civil forfeiture proceeding “in any district where such property is found," and § 1395(c) provides that a forfeiture

[5] *See* Mot. to Dismiss at 14

action over property "seized outside any judicial district" may be brought "in any district into which the property is brought." *Id.*

It is undisputed that the SKIPPER was seized on the "high seas."[6] And the Government has confirmed that the SKIPPER "is currently and has remained in international waters off the coast of Texas and has never entered the territorial waters of the United States."[7] Accordingly, § 1395 is inapplicable. The SKIPPER has never been physically "found" in "any district" nor has it ever been physically "brought" into any judicial district. *See* 28 U.S.C. § 1395. Because the SKIPPER is allegedly not a foreign-flagged vessel and thus considered stateless, and was not seized in, nor ever physically brought to, any judicial district, venue must be assessed under 28 U.S.C. § 1355(b)(2), and is therefore proper in this district, which interpretation is supported by the legislative history to the amendments of 28 U.S.C. § 1355(b)(2).

### C. The Iranian Terrorism Victims Consent to Venue in This Court and This Action Should Proceed to Discovery

As set forth above, the Court has jurisdiction and venue is proper in this District. Should the Court find it lacks venue as it relates to Windward's claim, however, venue is proper as to the Iranian Terrorism Victims' claim because the Iranian Terrorism Victims consented to, and thereby waived any defense to venue.[8] Indeed, "[u]nlike subject matter jurisdiction, challenging in rem jurisdiction is a waivable defense." *United States v. Real Prop. Located at 200 Meadowood Trail, Martinsville, Virginia*, 825 F. Supp. 3d 1239, 1248 (D. Utah 2026); *see also United States v. Approximately $9,105,221.62 in Funds*, No. 1:20-CV-23278, 2024 WL 3738926, at *10 (S.D. Fla. July 26, 2024), *report and recommendation adopted*, No. 1:20-CV-23278, 2024 WL 5165872

[6] United States' Verified Complaint for Forfeiture *In Rem*, February 26, 2026, Dkt. 1.

[7] Gov.'s Opp'n of Mot. To Dismiss and Mot. to Suppress, Affidavit, May 13, 2026, Dkt. 37-1.

[8] *See* Answer, Dkt No. 41 at ¶ 4 ("[T]he Iranian Terrorism Victims admit that, based on the facts alleged, venue is proper in this judicial district pursuant to 28 U.S.C. § 1355(b)(2).").

(S.D. Fla. Dec. 19, 2024) ("'A claimant waives an objection to in rem jurisdiction or to venue if the objection is not made by motion or stated in the answer.'") (quoting Supp. R. G(5)(b)); *United States v. Real Prop.*, No. 6:18-CV-315-REW, 2021 WL 144245, at *13 (E.D. Ky. Jan. 15, 2021) (stating that "the Court finds that it could treat Claimants as having waived their *in rem* jurisdictional challenge.").

The Iranian Terrorism Victims have a valid claim to the Defendant Property in this Action under Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), codified as a note to a section of the Foreign Sovereign Immunities Act of 1976. This gives the Iranian Terrorism Victims standing to enforce their outstanding judgments and a basis to contest the Government's efforts to forfeit the Defendant Property. Pub. L. No. 107-297, Title II, § 201, 116 Stat. 2337, 2339 (2002), codified at 28 U.S.C. § 1610 note.

Thus, the Iranian Terrorism Victims respectfully submit that the Court deny Windward's Motion to Dismiss, without prejudice to renew at a later juncture if, following discovery and motion practice, Windward persists in pursuing its claim. In the interim, the parties should proceed to discovery so that the Iranian Terrorism Victims may establish that they meet the requirements of TRIA to enforce their judgments. This is because TRIA prevails over any conflicts with the civil forfeiture laws that would prevent TRIA judgment holders from collecting on their judgments. *See United States v. All Petroleum-Product Cargo Aboard Achilleas ("Achilleas")*, --- F. Supp. 3d ---, 2026 WL 2618380, at *7 (D.D.C. Sept. 4, 2026). ("***Section 983 conflicts with the scope of the TRIA*** and purports to erect execution-related barriers to the Greenbaum Claimants' ability to satisfy their judgments.") (emphasis added); *see also Est. of Levin v. Wells Fargo Bank, N.A.*, ("*Levin II*"), 156 F.4th 632, 643 n.1 (D.C. Cir. 2025) ("We have said that this

phrase 'clearly requires courts to disregard other statutory provisions that conflict with the scope of the TRIA.'").

## CONCLUSION

For all of the above reasons, the Iranian Terrorism Victims respectfully submit that venue is proper in this Court and the Court should deny Windward's Motion to Dismiss, without prejudice to renew.

Dated: October 19, 2026

Respectfully submitted,

**CROWELL & MORING LLP**

*/s/Aryeh S. Portnoy*

Aryeh S. Portnoy, D.C. Bar No. 464507
John L. Murino, D.C. Bar No. 484818
Michael Williams, D.C. Bar No. 90006255

1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500

Joshua S. Sohn, D.D.C. Bar No. NY0743

Two Manhattan West
375 Ninth Avenue
New York, NY 10001

*Attorneys for Claimant the Iranian Terrorism Victims*