UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MOTOR TANKER SKIPPER BEARING INTERNATIONAL MARITIME NUMBER 9304667, AND THE OIL CARGO PREVIOUSLY LADEN THEREON,<br><br>Defendants *In Rem*. | Civ. A. No. 1:26-cv-697 (CJN) |

**GOVERNMENT'S SUPPLEMENTAL BRIEF ON VENUE**

Pursuant to the Court's Minute Order of October 5, 2026, the Government respectfully submits this supplemental brief on the issue of whether 28 U.S.C. § 1355(b)(2)'s venue grant over property "in a foreign country" includes property on the high seas. The Government submits that it does. The statutory structure, legislative history, and caselaw all support this conclusion.

As the Court is aware, Section 1355(b)(2) states:

> Whenever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government, an action or proceeding for forfeiture may be brought as provided in paragraph (1), or in the United States District court for the District of Columbia.

28 U.S.C. § 1355(b)(2). "Paragraph (1)" of Section 1355(b) grants venue in "the district" where any "acts" giving rise to forfeiture took place. 28 U.S.C. § 1355(b)(1)(A). But what about cases where all such acts occurred abroad? Those cases must be venued *somewhere*. *See generally Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 710 fn. 8 (1972) ("Congress does not in general intend to create venue gaps, which take away with one hand what

Congress has given by way of jurisdictional grant with the other."). The final clause of Section 1355(b)(2) states where: such cases can be venued in the U.S. District Court for the District of Columbia. It is the catch-all district for civil forfeiture cases against "foreign" property.

Moreover, 28 U.S.C. § 2461(b) specifically authorizes the Government to file civil forfeiture suits against property "seized on the high seas" (without stating the district in which such suits should be filed). If Section 1355(b)(2)'s reference to "a foreign country" were narrowly construed to exclude the high seas, then there would be no district where these suits could be brought. Presumably such a venue gap is not what Congress intended when it specifically empowered the courts with jurisdiction to adjudicate forfeiture actions over property seized on the high seas.

The substantive forfeiture statute at issue here, 18 U.S.C. § 981(a)(1)(G)(i), is also instructive. It authorizes forfeiture of "foreign" property that afforded "person[s] a source of influence over" a foreign terrorist organization.[1] The property necessarily falls outside any "district" under Section 1355(b). The acts giving rise to forfeiture will also likely be foreign, such as the foreign oil shipments giving rise to this case and similar cases. In the past year alone, the Government instituted civil forfeiture cases over seven Iran-linked oil tankers, most of which were seized on the high seas half a world away from the United States. Again, these cases, based on acts beyond any particular "district," must be venued *somewhere*.

---

[1] 18 U.S.C. § 981(a)(1)(G)(i) authorizes forfeiture of:
"(G) All assets, foreign or domestic--
(i) of any individual, entity, or organization engaged in planning or perpetrating any any [sic] Federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property, and all assets, foreign or domestic, affording any person a source of influence over any such entity or organization."

Notably, the Congressional commentary surrounding the enactment of Section 1355 stated that "it would make no sense for Congress to provide for venue in a district without intending to give the court in that district jurisdiction as well." 137 Cong. Rec. S12183-02, 1991 WL 144937, 160 (Aug. 2, 1991). The converse is equally true: it would make no sense to grant jurisdiction over a class of civil forfeiture cases without providing a venue for them. Thus, Section 1355(b)(2)'s reference to "a foreign country" should be construed to cover the high seas, to vindicate the presumed Congressional intent that at least one district may hear civil forfeiture cases against property seized on the high seas.

In prior briefing, Windward suggested that the venue gap could be overcome by towing vessels seized on the high seas into the United States, thereby invoking 28 U.S.C. § 1395 and its provisions granting venue in a district where the subject property is located. *See, e.g.,* Dkt. 39 at 7. But this "solution" presents at least two problems. First, for vessels seized half a world away from the United States, it would be quite impractical to tow them all the way to the United States, which strongly suggests that Congress did not intend to force this cumbersome procedure just to trigger venue. Second, the above-cited Congressional commentary specifically said that Section 1355's purpose was to go beyond traditional rules that required civil forfeiture suits to be brought in the district where the property was located. *See* 1991 WL 144937 at 160 (explaining how "[u]nder the early in rem cases, jurisdiction was proper only in the district where the property was 'located'" and how Section 1355 overcomes this limitation). Thus, it makes little sense to think that the drafters of Section 1355 intended to force the Government to tow high-seas property into the United States just to trigger location-based venue.

Turning to the caselaw, one court in this District has specifically stated (albeit in dicta) that the phrase "located in a foreign country" in Section 1355(b)(2) covers property on the high

seas. *Matter of Seizure & Search of Motor Yacht Tango*, 597 F. Supp. 3d 149, 152 n.2 (D.D.C. 2022).[2] And two other courts in this District, while not directly addressing the high seas, equated Section 1355(b)(2)'s language "located in a foreign country" with "located outside the United States." *See United States v. One Gold Ring with Carved Gemstone*, No. 16-CV-02442, 2019 WL 5853493, at *1 (D.D.C. Nov. 7, 2019) ("the statute empowers the government to seek the forfeiture of property outside the United States . . . This court is the sole jurisdiction where such litigation is properly lodged. 28 U.S.C. § 1355(b)(2)"); *see also United States v. All Assets Held in Acct. No. XXXXXXXX*, 330 F. Supp. 3d 150, 156 (D.D.C. 2018) ("[I]n this case—and increasingly in the modern era—the defendant assets are located outside the United States. Therefore, this Court's jurisdiction rests on 28 U.S.C. § 1355(b)(2)"). Under this construction of Section 1355(b)(2), the statute covers the high seas, since the high seas are "outside the United States."

Finally, while Windward relies on a hyper-literal distinction between "foreign country" and "high seas," courts have held that other statutory language referring to "a foreign country" embraces the high seas. For example, a Federal tariff statute imposing tariffs on whale oil "imported from any foreign country into the United States" was held to cover whale oil imported into the United States from the high seas. *Procter & Gamble Mfg. Co. v. United States*, 19 C.C.P.A. 415, 422 (1932). Another Federal statute levied duties on the expense of ship repairs occurring in "a foreign country," and a court held that this statutory language embraced repairs

---

[2] In prior briefing, Windward argued that the *Tango* court was addressing only Section 2461(b), not Section 1355(b)(2). Dkt. 39 at 6. This is plainly untrue. In the relevant footnote, the *Tango* court stated that if the property were "on the high seas, this Court would similarly have jurisdiction/venue." Immediately after stating this proposition, the court cited Section 1355(b)(2) as the first supporting authority. 597 F. Supp. 3d at 152 n.2.

occurring on the high seas. *Mount Washington Tanker Co. v. United States*, 505 F. Supp. 209, 215 (Ct. Int'l Trade 1980). *Mount Washington* even cited "an early Supreme Court case which considered the 'high seas' to be a foreign country." *Id.* at 213 (citing *The Brig Concord*, 13 U.S. 387 (1815)).

The Government also notes the Supreme Court's 1932 statement that "[t]he term 'foreign country' is not a technical or artificial one, and the sense in which it is used in a statute must be determined by reference to the purpose of the particular legislation." *Burnet v. Chicago Portrait Co.*, 285 U.S. 1, 6 (1932). As shown by the above-cited cases, there are numerous circumstances where statutory language referencing "a foreign country" was held to embrace the high seas in order to vindicate the purpose and spirit of the relevant statutes. So it is with Section 1355(b)(2): excluding the high seas from Section 1355(b)(2)'s reach would create bizarre statutory gaps that Congress could not have intended. Thus, just as courts in other contexts have rejected hyper-literal distinctions between "foreign country" and "high seas,"[3] this Court should reject such distinction in Section 1355(b)(2). Instead, this Court should hold that Section 1355(b)(2) grants civil forfeiture venue in this District for property located outside the United States, including property on the high seas.

---

[3] Courts have not only held that statutory language reciting "a foreign country" covers the high seas; they also held that statutory language reciting "the high seas" may cover foreign countries. For example, the Death on the High Seas Act (DOHSA), which covers wrongful deaths "occurring on the high seas beyond 3 nautical miles from the shore of the United States," has regularly been interpreted to cover wrongful deaths occurring in foreign territorial waters. *See, e.g., Howard v. Crystal Cruises, Inc.*, 41 F.3d 527, 529-30 (9th Cir. 1994) (citing cases). These cases rely on the commonsense point that DOHSA meant to cover actions and occurrences *outside the United States*, whether they technically occurred on the high seas or in foreign territorial waters. The DOHSA cases further illustrate how hyper-literal distinctions between "high seas" and "foreign country" should be rejected.

Dated: October 19, 2026
Washington, D.C.

Respectfully Submitted,

Jeanine Ferris Pirro
United States Attorney

By: ____*/s/ Rajbir Datta*___________
Rajbir Datta
N.Y Bar 5206073
Assistant United States Attorney
U.S. Attorney's Office
District of Columbia
601 D Street, N.W.
Washington, D.C. 20579
(202) 252-7687
Rajbir.Datta@usdoj.gov

John Eisenberg
Assistant Attorney General
National Security Division

By: __*/s/ Sean Heiden*___________
Sean Heiden
D.C. Bar 1617636
Acting Deputy Chief
Counterintelligence and Export Control
National Security Division
U.S. Department of Justice
Sean.heiden2@usdoj.gov

Margaret A. Moeser
Chief
Money Laundering, Narcotics and Forfeiture
Section, Criminal Division
U.S. Department of Justice

By: __*/s/ Joshua L. Sohn*_____________________
Joshua L. Sohn
S. Chartey Quarcoo
Trial Attorneys